UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MANUEL IYAHEN,

                              Plaintiff,

                -against-

CITY OF NEW YORK; POLICE OFFICER SCOTT
KARDIAN, SHIELD NO. 563; POLICE OFFICER JUSTIN
TAM, SHIELD NO. 6167; POLICE OFFICER
CHRISTOPHER MAKI, SHIELD NO. 2644; POLICE
OFFICERS JOHN DOE 1 through 4, individually (the names
John and Jane Doe being fictitious, as the true names are
presently unknown),

                              Defendants.

**COMPLAINT**

1:20-cv-3448

Plaintiff MANUEL IYAHEN, by his attorneys, MASAI I. LORD of LORD &
SCHEWEL PLLC, alleges the following:

## PRELIMINARY STATEMENT

1. Plaintiff Manuel Iyahen ("Mr. Iyahen" or "Plaintiff") served several months in custody after being wrongfully arrested and charged with an assault that he did not commit.

2. Mr. Iyahen brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his rights under the Constitution of the United States of America.

## JURISDICTION

3. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) because Mr.

Iyahen's claims arise under law of the United States and seek redress of the deprivation under color of state law of rights guaranteed by the United States Constitution.

## VENUE

4.  Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), and 28 U.S.C. § 1402(b), where Defendants reside and maintain their relevant places of business, and where the actions complained of herein occurred.

## JURY DEMAND

5.  Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## THE PARTIES

6.  Plaintiff Manuel Iyahen is a resident of the of the State of New York, county of The Bronx.

7.  Defendant City of New York is a municipal corporation organized under the laws of the State of New York.  It operates the New York City Police Department ("NYPD"), a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

8.  Defendant Police Officer Scott Kardian ("Kardian"), Shield No. 6852, was at all times relevant to this Complaint a duly appointed and acting employee of the City of New York and the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the NYPD.  He is sued in his individual capacity.

9. Defendant Police Officer Justin Tam ("Tam"), Shield No. 6167, was at all times relevant to this Complaint a duly appointed and acting employee of the City of New York and the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the NYPD.  He is sued in his individual capacity.

10. Defendant Police Officer Christopher Maki ("Maki"), Shield No. 2644, was at all times relevant to this Complaint a duly appointed and acting employee of the City of New York and the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the NYPD.  He is sued in his individual capacity.

11. Defendants Officers John Doe  1-4 ("Officer Does" or "John Does") was at all times relevant to this Complaint a duly appointed and acting employee of the City of New York and the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the NYPD.  He is sued in his individual capacity.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

**The Initial Encounter**

12. On May 31, 2017, Plaintiff's mother ("Mrs. Iyahen") called 911 to have her son transported to Jacobi Hospital for psychological treatment.  Mr. Iyahen was categorized by the NYPD as an Emotionally Disturbed Person ("EDP").

13. Police Officers arrived in multiple squad cars and approximately six officers, Defendants John Does, arrived and pounded on the door in a loud and hostile manner.

14.     Defendant John Does entered the house, yelling at Mr. Iyahen.  They pushed him into a chair and placed Mr. Iyahen in handcuffs.

15.     The conduct of John Does was in violation of NYPD Guidelines dealing with EDPs. Consequently, their conduct exacerbated the situation causing Mr. Iyahen to be overwhelmed and traumatized.

16.     Mr. Iyahen was taken to Jacobi Hospital in The Bronx, New York.

**Plaintiff is assaulted by officer while at Jacobi Hospital**

17.     While at Jacobi Hospital, Plaintiff was held in a room with, *inter alia*, Defendant Justin Tam.

18.     Defendant Tam thought that plaintiff was entering his "personal space."  Consequently, Defendant Tam struck Mr. Iyahen in the face in order to get him to move back.

19.     Mr. Iyahen did not physically touch or assault Officer Tam before he was struck in the face and attacked.  The use force by Defendant Tam was patently unreasonable and blatantly excessive.

20.     After the attack by Defendant Tam, additional officers came causing a struggle that resulted in injuries to plaintiff.

21.     This attack left Plaintiff battered and bruised, with swelling on the side of his face, large contusions on the back of his neck, shoulders and entire torso.

22.     Plaintiff was handcuffed to the bed in Jacobi Hospital unable to move, go to the bathroom, or take his medication without assistance.

23.     Upon information and belief, Plaintiff was kept in this condition until he was arraigned from Jacobi Hospital on June 14, 2017.

24.     Plaintiff was then transported to Bellevue Hospital.

4

25. Without authorization or authority, Mr. Iyahen was held in Belluve Hospital until some time in October, 2017.

**Plaintiff's Case is Dismissed**

26. Mr. Iyhanen had to make approximately 11 different court appearances before his case was ultimately dismissed on September 26, 2018.

## INJURIES AND DAMAGES

27. This action seeks damages on behalf of Plaintiff for the loss of liberty, extraordinary emotional pain and suffering, and injuries to his person, that Plaintiff was forced to endure as a consequence of Defendants' decidedly wrongful actions.

28. As a result of his wrongful arrest and unjust imprisonment, despite his actual innocence of any crime, Mr. Iyahen was held in custody for months.  He has suffered, and continues to suffer, severe and ongoing damages, specifically including lost educational and professional, physical pain and injuries, inadequate medical care, serious psychological and emotional damage, loss of familial relationships, and loss of quality of life.

29. The acts and omissions of Defendants entitle Plaintiff to compensatory and punitive damages.

## FIRST CLAIM:

### FABRICATION OF EVIDENCE
#### (Against Defendant John Does and Defendant Tam)

30. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein and further

alleges that Individual Detectives and Officers acting individually and in concert and

conspiracy, deliberately and recklessly fabricated evidence.

31. By their conduct, as described herein, and acting under color of state law, defendants are

    liable to plaintiff under 42 U.S.C. § 1983 for the violation of his constitutional right to be

    free from fabrication of evidence pursuant to the Fourth, Fifth, Sixth and Fourteenth

    Amendments of the United States Constitution and under 42 U.S.C. § 1983.

32. Defendant Officer Tam fabricated evidence by informing the Bronx County District

    Attorney's Office that Mr. Iyahen had struck him first.

33. As a direct and proximate result, individual detectives' fabrication of evidence, violated

    Mr. Iyahen's clearly established due process rights including the right to a fair trial, and

    caused him to be wrongfully prosecuted and to suffer the injuries and damages described

    above.

**SECOND CLAIM:**

**MALICIOUS PROSECUTION or**
**PROSECUTION WITHOUT PROBABLE CAUSE**
**(Against Defendants Tam, Maki and Kardian)**

34. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the

    above paragraphs with the same force and effect as if fully set forth herein.

35. By their conduct, as described herein, and acting under color of state law, defendants are

    liable to plaintiff under 42 U.S.C. § 1983 for the violation of his constitutional right to be

    free from malicious prosecution under the Fourth and Fourteenth Amendments to the

    United States Constitution.

36. Individual Officers, despite knowing that probable cause did not exist to arrest and prosecute Plaintiff, intentionally, recklessly, and with malice caused Plaintiff to be arrested, prosecuted, and indicted.

37. Mr. Iyahen is innocent.  The prosecution finally terminated in his favor on September 26, 2018.

38. As a direct and proximate result, Plaintiff was wrongly arrested and imprisoned, causing him to suffer the injuries and damages described above.

### THIRD CLAIM:
### FAILURE TO INTERVENE
### (Against Defendant John Does
### and Defendant Kardian and Maki)

39. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

40. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

41. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

42. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### FOURTH CLAIM:

### MONELL LIABILITY
### (Against all defendants)

43. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

44. This is not an isolated incident.

45.  NYPD Officers lack proper training and supervision when dealing with EDPs, or those in a "mental health crisis," that cause constitutional violations by the NYPD.[1]

46.  In the last four years, at least fourteen individuals classified as EDPs have been killed by the Police.[2]  Six mentally ill persons were killed at the hand of the NYPD over a 11 month period in 2017 alone.[3]  These deaths represent only the most egregious constitutional violations as the NYPD utilizes excessive and unnecessary force in thousands of encounters each year.[4]

47. NYPD Officers are dramatically undertrained. On September 27, 2017, a few months after the instant matter, fewer than 20% of officers had been trained in the crisis intervention training designed to minimize use of force.[5]  This training was instituted in the summer of 2015.[6]

48. The city is aware of the lack of training, its wide spread nature, and its propensity to cause excessive force by officers.[7]  The aforementioned crisis intervention training was developed in response to complaints of NYPD Officers handling of EDPs, but the City failed to train the requisite number of officers for the additional training to have an effect.[8]  In 2017, the New York City Council held a hearing addressing the effectiveness

---

[1] *NYPD has new orders for dealing with mentally ill:  Lose the lingo.*  Oct. 21 , 2019. (Available at: https://nypost.com/2019/10/21/nypd-has-new-orders-for-dealing-with-mentally-ill-lose-the-lingo/).
[2] *NYPD's Mental-Illness Response Breakdown,* New York Intelligencer, Mar 21, 2019, (Available at: https://nymag.com/intelligencer/2019/03/special-report-nypds-mental-illness-response-breakdown.html)
[3] *As Deaths Mount, Scrutiny of NYPD Response to 'Emotionally Disturbed Persons,'* Gotham Gazette, Sep 27, 2017, (Available at: https://www.gothamgazette.com/city/7216-as-deaths-mount-scrutiny-of-nypd-response-to-emotionally-disturbed-persons).
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *See Cordero v. City of New York*, 282 F. Supp. 3d 549, 563–64 (E.D.N.Y. 2017) ("Newspaper articles, reports, and other documents may provide sufficient documentary evidence for *Monell* liability.").
[8] See, Footnote #2.

of the NYPD's response to EDP calls and asked for additional clarity regarding past

deadly interactions between NYPD and EDPs as well as created a mayoral working

group to assess their response to EDP calls.[9] This was not effective.  Moreover, the

NYPD failed to implement  the "co-response" teams of police and mental health workers,

designed to minimize the unnecessary use of force by NYPD officers, that was formed in

2016 but never connected to the 911 system.[10]  Further, the City planned to open

"diversion centers" trained by mental  health workers where NYPD Officers could bring

EDPs, but no center was ever opened.  In 2018, the newly created Crisis Prevention and

Response Task Force was supposed to produce a citywide strategy for dealings with

EDPs, but upon information and belief, the report has yet to be completed.[11] An analysis

of 2017 NYPD calls showed that the 56 percent of EDPs are transported to hospital

emergency rooms, yet these emergency rooms are not equipped to provide the treatment

necessary to stop the shuttling from the emergency rooms to jail.[12]  Most are quickly

discharged back to the streets and in fifteen percent return to the hospital within thirty

days.[13]

49. The City of New York (the "City"), through policies, practices and customs, directly

caused the constitutional violations suffered by plaintiff.

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

50. The City, at all relevant times, was, upon information and belief, aware that these individual defendants routinely commit constitutional violations such as those at issue here and has failed to change its policies, practices and customs to stop this behavior.

51. The City, at all relevant times, was aware that these individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

52. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**SEVENTH CLAIM:**
**FALSE ARREST**
**(Against Defendant John Does and Defendant Tam)**

53. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

54. Officer John and  Jane Does violated the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 because they placed  plaintiff in custody without probable cause or legal authorization.

55.  Officer Tam violated the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 when he arrested plaintiff.

56. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a)  Compensatory damages against all defendants, jointly and severally;

(b)  Punitive damages against the individual defendants, jointly and severally;

(c)  Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d)  Such other and further relief as this Court deems just and proper.

Dated:         May 3 2020
               New York, New York

                                   /s/ Masai I. Lord
                                   Masai I. Lord
                                   Lord & Schewel PLLC
                                   233 Broadway, Suite 2220
                                   New York, NY 10279
                                   P: 718-701-1002
                                   E: lord@nycivilrights.nyc